OPINION
{¶ 1} Defendants-appellants, Mike and Jane Humes, appeal from a judgment of the Franklin County Municipal Court in favor of plaintiffs-appellees, Brian and Lynda Clark. For the following reasons, we affirm.
 {¶ 2} In April 2004, the parties entered into a real estate purchase contract whereby the Clarks agreed to buy the Humes' house. After an inspection of the house, the Clarks requested that the Humes remedy the "unsatisfactory condition" of the *Page 2 
sunroom at the rear of the house. In a "Request to Remedy" form dated April 23, 2004, the Clarks proposed:
 4) Beam in crawl space under sunroom to be replaced because of decay. Add additional support under beam. Determine if the cause of moisture is current; if current, repair condition. Method of repair to be decided upon by a licensed, structural engineer. Engineer fee is to be paid for by the seller.
 {¶ 3} In response to the Clarks' proposed remedy, the Humes hired a structural engineer, Craig F. Carson of Craine Engineering Consultants, to inspect the sunroom and the crawl space underneath the sunroom. Following his April 29, 2004 inspection, Carson recommended the following:
 The damaged sill plate should be replaced along the rear of the crawl space. The wood girder should be repaired where damaged. (REAR)
 Damaged insulation should be removed and replaced. Additional damage discovered during the process and with further investigation should be repaired.
 Sources of the problem (i.e. grading drainage) should be addressed. Ventilation should be improved.
Jane Humes asked Carson to explain how the needed repairs could be accomplished, but Carson demurred and directed her to contact a contractor. Jane Humes then located Mader Construction and requested that it submit an estimate for the necessary repairs. Michael Mader inspected the sunroom and estimated that replacement of the sill plate and reinforcement of the support beam would cost $800.
 {¶ 4} Having investigated the problem, the Humes drafted an "Addendum to Real Estate Purchase Contract" to address the Clarks' concerns. This offer, which the Humes made on April 29, 2004, stated: *Page 3 
 4. In reference to issue #4, Sellers have consulted with a structural engineer and will have issue remedied pursuant to the recommendations of that engineer.
The Clarks accepted the Humes' proposed remedy for the sunroom problem and when doing so, wrote next to the relevant provision, "[b]uyers agree to recommendation from Craig Carson Craine Engineering dated 4-29-04."
 {¶ 5} The Humes hired Mader with the intent that he would perform the repairs before the closing, scheduled for June 11, 2004. Mader, however, delayed the project. When it became apparent that Mader would not begin work before the closing, the Clarks requested that the Humes place money for the repairs in an escrow account. The Humes agreed, and on June 9, 2004, the parties executed another addendum to the real estate purchase contract, which read:
 1) Sellers agree to put $3000 in escrow at closing for the work to be done on the beam in the crawl space under the sun room. Any remaining funds after work has been completed will be returned to the Sellers.
 {¶ 6} At the closing, the Humes and the Clarks signed an escrow agreement that provided:
 It has been determined that the following has not been completed or repaired:
 Beam Repair in crawl space
 It is agreed that the sum of $3000 is to be held by The Talon Group until the above items have been completed. * * *
 If work is done after 8/31/04 and is less than $3000, difference to be refunded to seller from buyer.
 {¶ 7} The Humes leased the house from the Clarks for approximately a month after the closing, moving out on July 15, 2004. On that day, Mader finally arrived at the *Page 4 
house to repair the sunroom. In the midst of the Humes' move, Mader approached Jane Humes and told her that the sunroom would require more work than he had initially estimated. Given the scope of the necessary repairs, Mader did not know if he would be able to do the job at all.
 {¶ 8} The Humes then asked two different contractors to submit estimates for the repair work, but they did not hire either contractor. From late July through September 2004, Brian Clark telephoned and emailed the Humes asking when the repair work would be completed. When he did not receive an answer, Brian Clark hired DDS Construction to do the repairs. Ultimately, the Clarks spent $21,482 to remedy the problems with the sunroom. The work included replacing the decayed and rotted sub-floor and support beam; repairing leaking windows; replacing the aluminum siding and decking that was removed to do the necessary repairs; and re-grading the backyard so that water would not drain into the sunroom again. Although the Humes released the $3,000 contained in the escrow account to pay for the repairs, they refused to pay the remaining $18,482 in costs.
 {¶ 9} On April 7, 2005, the Clarks filed a breach of contract action against the Humes. The parties agreed to submit their case to the trial court for judgment based upon deposition testimony and documentary evidence. On October 27, 2006, the trial court issued a decision and entry finding in favor of the Clarks and awarding them $15,000 in damages.
 {¶ 10} The Humes now appeal from the trial court's October 27, 2006 judgment and assign the following error:
 THE TRIAL COURT ERRED IN ENTERING JUDGMENT FOR THE CLARKS WHEN THE HUMES MET THEIR POST-CLOSING *Page 5 
OBLIGATIONS OF REPAIRING A SINGLE BEAM AT A MAXIMUM COST OF $3,000.00.
 {¶ 11} In support of their only assignment of error, the Humes present three arguments. By their first two arguments, the Humes contend that the trial court improperly interpreted the real estate purchase contract. First, the Humes posit that the real estate purchase contract only requires them to pay for the repair of the beam supporting the sunroom. Second, they assert that the real estate purchase contract limits their exposure for the repairs to $3,000. We disagree with both arguments.
 {¶ 12} The construction of contracts is a matter of law. Alexander v.Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. When construing a contract, a court's principle objective is to ascertain and give effect to the intent of the parties. Hamilton Ins.Serv., Inc. v. Nationwide Ins. Co. (1999), 86 Ohio St.3d 270, 273. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. Med. Life Ins.Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. In determining the parties' intent, a court must read the contract as a whole and give effect, if possible, to every provision contained in the contract. Foster Wheeler Enviresponse, Inc. v. Franklin Cty. ConventionFacilities Auth. (1997), 78 Ohio St.3d 353, 361-362.
 {¶ 13} A court will only consider extrinsic evidence in an effort to give effect to the parties' intentions if the language of a contract is ambiguous. Shifrin v. Forest City Enter, Inc. (1992), 64 Ohio St.3d 635,638. Contract language is ambiguous if its meaning cannot be determined from the four corners of the contract or if the language is susceptible to two or more conflicting, but reasonable, interpretations.Covington v. Lucia, 151 Ohio App.3d 409, 2003-Ohio-346, at ¶ 18. *Page 6 
 {¶ 14} In the case at bar, the Humes' first argument relies upon language contained in the June 9 addendum, which states, "[s]ellers agree to put $3000 in escrow at closing for the work to be done on the beam in the crawl space under the sun room." The Humes assert that this language limits their contractual responsibility to the repair of the beam, and exempts them from any duty to pay for any other repairs to the sunroom. This argument ignores the whole of the contract; specifically, the April 29 addendum. That addendum states, "[s]ellers have consulted with a structural engineer and will have issue remedied pursuant to the recommendations of that engineer." Thus, the April 29 addendum specifies what repairs the Humes must pay for (i.e., those recommended by the engineer), while the June 9 addendum specifies how the Humes would provide for payment for the work, or at least, a portion of the work.
 {¶ 15} As Humes' counsel pointed out at oral argument, the language of the April 29 addendum is ambiguous. Because the addendum does not set forth the name of the structural engineer or his recommendations, this court must look outside of the contract to determine that information. However, this ambiguity does not create an additional issue of fact for the trial court to resolve. At the time the Humes drafted the April 29 addendum, they had consulted with only one structural engineer — Carson. Therefore, the ambiguous provision can only refer to him and his recommendations. Moreover, the Clarks understood the April 29 addendum to refer to Carson, as evidenced by the handwritten statement that they added to the addendum: "[b]uyers agree to recommendation from Craig Carson Craine Engineering dated 4-29-04." Therefore, the real estate purchase contract requires the Humes to pay for any repairs made at Carson's recommendation. As Carson recommended more than just repair of the support beam, the Humes' *Page 7 
contractual obligation to remedy the condition of the sunroom extends beyond repair of the beam.
 {¶ 16} Second, the Humes argue that the June 9 addendum caps their liability for repairs to the sunroom at $3,000. In the June 9 addendum, the Humes agreed to put $3000 in an escrow account. Nothing in the clear, unambiguous language of that addendum limits the Humes' monetary liability. The June 9 addendum merely ensures that at least $3,000 would be available for the repairs; it does not set a maximum amount for which the Humes would be responsible.
 {¶ 17} The Humes next argue that the doctrine of caveat emptor precludes the Clarks' breach of contract claim. We disagree.
 {¶ 18} The doctrine of caveat emptor ("let the buyer beware") is a defense to claims of fraud and misrepresentation related to real estate transactions. Gentile v. Ristas, 160 Ohio App.3d 765, 2005-Ohio-2197, at ¶ 49. See, also, Layman v. Binns (1988), 35 Ohio St.3d 176, 177
(pursuant to the doctrine of caveat emptor, "the purchaser has no just cause for complaint even though there are misstatements and misrepresentations by the vendor * * *"). "Generally, the doctrine governs the obligation of sellers of real property to disclose information to potential buyers and precludes any reliance on certain misrepresentations made by a seller or sellers concerning the condition of the property at issue." Gentile, at ¶ 49.
 {¶ 19} In the case at bar, the actionable conduct underlying the Clarks' claim is not a misrepresentation. The Clarks are not disappointed buyers seeking recovery for a condition that they allege the Humes did not properly disclose. Rather, the Clarks assert that the Humes failed to perform their contractual duty. The Clarks were aware of the *Page 8 
condition of the sunroom, addressed the condition in the real estate purchase contract, and now seek a recovery based upon that contract. The doctrine of caveat emptor, which protects a seller from liability for misrepresentations, does not excuse the Humes' refusal to honor their contractual obligation.
 {¶ 20} Because all of the Humes' arguments fail, we overrule their only assignment of error. Accordingly, we affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
McGRATH, P.J., and WHITESIDE, J., concur.
 WHITESIDE, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1