[Cite as *DDR Rio Hondo, L.L.C. v. Sunglass Hut Trading, L.L.C.*, 2013-Ohio-1800.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   98986

---

# DDR RIO HONDO, L.L.C., S.E.

PLAINTIFF-APPELLANT

vs.

# SUNGLASS HUT TRADING, L.L.C., ET AL.

DEFENDANTS-APPELLEES

---

### JUDGMENT:
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-739061

**BEFORE:**    Boyle, P.J., Blackmon, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**    May 2, 2013

**ATTORNEYS FOR APPELLANT**

David J. Michalski
Mark R. Koberna
Sonkin & Koberna Co., L.P.A.
3401 Enterprise Parkway
Suite 400
Cleveland, Ohio    44122


**ATTORNEYS FOR APPELLEES**

David C. Tryon
Brodie Butland
Isaac A. Molnar
Porter Wright Morris & Arthur, L.L.P.
925 Euclid Avenue
Suite 1700
Cleveland, Ohio    44115

MARY J. BOYLE, P.J.:

**{¶1}** Plaintiff-appellant, DDR Rio Hondo L.L.C., S.E. ("DDR"), appeals the trial court's decision awarding summary judgment in favor of defendant-appellee, Sunglass Hut Trading, L.L.C. ("Sunglass Hut"). Finding merit to the appeal, we affirm in part, reverse in part, and remand for further proceedings.

## Procedural History and Facts

**{¶2}** This case involves a commercial lease between DDR (landlord) and Sunglass Hut (tenant) for 500 square feet in the Plaza Rio Hondo shopping center in Bayamon, Puerto Rico. The parties entered into the lease on December 13, 2006. The rent commencement date of the lease was February 11, 2007, and lasted ten years unless a party terminated the agreement pursuant to its provisions.

**{¶3}** Under the lease, there is a default rent provision (Article IV– "Rent") that obligates tenant to pay "minimum rent," "without any deduction or setoff, the amount set forth in Schedule A, * * * on the first day of each calendar month." Under Schedule A, the monthly rent for the first three years of the lease is $3,333.33. In addition to the minimum rent, Article IV(B) provides that the tenant "also agrees to pay to landlord as 'percentage rent' during each lease year, without any deduction or setoff, the percentage of 'gross sales' in excess of the minimum basis of sales set forth in Schedule A."

While the minimum rent was due monthly, the percentage rent, if applicable, was due the "30th day of the month following the end of each lease year."

{¶4} Under the miscellaneous provisions section of the lease (Article XXV), there is a provision, referred to as the "co-tenancy provision," that provides for an "alternative rent" in the event that a certain occupancy threshold of other tenants is not met in the plaza. The alternative rent is calculated based on 6 percent of the tenant's gross sales. This provision provides that "Tenant may elect to pay [alternative rent] in lieu of minimum rent and percentage rent" until the occupancy threshold for tenants is satisfied.

{¶5} The record reveals, beginning March 2007 and forward, that Sunglass Hut continued to pay the minimum rent of $3,333.33 in accordance with an initial rent commencement letter sent by DDR. According to Sunglass Hut, in late 2008 it became aware that some of its landlords were not accurately reporting occupancy levels, and so it conducted an audit of all its leases for potential co-tenancy issues. In April 2009, Sunglass Hut requested relevant occupancy information from DDR from the rent commencement date through the present, and learned that the co-tenancy provision was never satisfied. Thereafter, Sunglass Hut "elected" to pay alternative rent and proceeded to take credits against future rent.

{¶6} In October 2010, DDR filed the underlying action, alleging that Sunglass Hut breached the lease agreement by failing to pay rent. In the alternative, DDR alleged a claim for unjust enrichment.

{¶7} Sunglass Hut answered the complaint and asserted a counterclaim, seeking a declaratory judgment that in April 2009, it had properly elected to pay alternative rent for the period during which the co-tenancy requirement had not been met. According to Sunglass Hut, since the co-tenancy requirement had not been satisfied at the rent commencement date through June 2009, Sunglass Hut was entitled to elect to pay the alternative rent and was therefore entitled to a credit toward future rent. Sunglass Hut further sought a declaration that it was entitled to attorney fees as the "prevailing party" under the lease.

{¶8} Both parties filed cross-motions for summary judgment in support of their claims. The trial court found that Sunglass Hut properly elected to pay the alternative rent and, therefore, granted Sunglass Hut's motion for summary judgment and awarded it a credit against rent owed from June 10, 2009 until the end of the lease term. Specifically, the trial court awarded Sunglass Hut $69,804.33 — the difference between the minimum rent paid through June 9, 2009 under Article IV and the alternative rent actually owed under Article XXV for that same period. The trial court denied DDR's motion for summary judgment and entered judgment in favor of Sunglass Hut on the complaint. Finding that Sunglass Hut was a prevailing party under the lease, the trial court further awarded it costs and attorney fees for $40,157.82 — an amount later stipulated to by the parties.

{¶9} DDR appeals, raising three assignments of error:

I. The trial court erred in granting defendant/appellee's motion for summary judgment in the journal entry filed June 13, 2012.

II. The trial court erred in denying in plaintiff/appellant's motion for summary judgment in the journal entry filed June 13, 2012.

III. The trial court erred in awarding defendant/appellee $40,167.82 in costs, expenses, and reasonable fees to attorneys in the journal entry filed August 30, 2012.

## Standard of Review

{¶10} We review an appeal from summary judgment under a de novo standard. *Baiko v. Mays*, 140 Ohio App.3d 1, 10, 746 N.E.2d 618 (8th Dist.2000). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997).

{¶11} Civ.R. 56(C) provides that before summary judgment may be granted, a court must determine the following:

(1) no genuine issue as to any material fact remains to be litigated,

(2) the moving party is entitled to judgment as a matter of law, and

(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.

*State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 191, 672 N.E.2d 654 (1996).

## Election of the Alternative Rent

{¶12} In its first assignment of error, DDR argues that the trial court erred in granting summary judgment in favor of Sunglass Hut. DDR contends that the lease does not allow Sunglass Hut to elect to pay alternative rent two years after the fact and then retroactively credit itself for the difference between the alternative rent and the minimum rent that it has already paid. Conversely, Sunglass Hut argues that the co-tenancy provision does not explicitly require the tenant to elect to pay alternative rent before a certain date nor does it state that failure to exercise such right waives it.

{¶13} The interpretation and construction of a written contract is a question of law and, therefore, appellate courts will review de novo the trial court's interpretation of a contract. *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). Leases are contracts subject to the traditional rules of contract interpretation. *Mark-It Place Foods v. New Plan Excel Realty Trust, Inc.*, 156 Ohio App.3d 65, 2004-Ohio-411, 804 N.E.2d 979, ¶ 29 (4th Dist.).

{¶14} The purpose of contract construction is to discover and effectuate the intent of the parties. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9. The intent of the parties is presumed to reside in the language they chose to use in their agreement. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987). In determining the intent of the parties, the court must read the contract as a whole and give effect to every part of the contract, if possible. *Clark v. Humes*, 10th Dist. No. 06AP-1202, 2008-Ohio-640, ¶ 12.

{¶15} If the terms of the contract are determined to be clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the parties' rights and obligations. *Davis v. Loopco Indus., Inc.*, 66 Ohio St.3d 64, 66, 609 N.E.2d 144 (1993); *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978). But if the provisions of a contract are ambiguous, an issue of fact exists, making summary judgment inappropriate. *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984). "Contractual terms are ambiguous if their meaning cannot be deciphered from reading the entire instrument or if the terms are reasonably susceptible to more than one interpretation." *Look v. H&M Custom Home Builders Co., Inc.*, 11th Dist. No. 2011-G-3036, 2012-Ohio-3017, ¶ 18, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 54, 544 N.E.2d 920 (1989).

{¶16} In granting summary judgment in favor of Sunglass Hut, the trial court recognized a general intent of the parties to calculate rent based on the "value" of the space. As stated by the trial court,

> Ordinarily, for retail space, a property is more valuable, and the rent higher, where gross sales are likely to be higher. Correspondingly, a property is less valuable, and the rent lower, where gross sales are likely to be lower. * * * Here, the co-tenancy clause is the parties' implicit acknowledgment of the direct correlation between the value of the space and the amount of foot traffic, since the gross sales of a store like Sunglass Hut correspond to the volume of foot traffic, which, in turn, goes up or down depending on how fully occupied the shopping center is.

{¶17} The trial court ultimately found that this general intent to ensure that rent reflected the value of the premises was clearly and unambiguously expressed by the

specific language of the co-tenancy provision, which provides as follows:

> Notwithstanding anything to the contrary contained herein, if either Marshalls or seventy-five (75%) fo the gross leasable area of the Future Retail Area (as indicated on Exhibit A-2) is not operating and open for business to the public on the Rent Commencement Date, then Tenant may elect to pay six percent (6%) of Gross Sales in lieu of Minimum Rent and Percentage Rent until such time that Marshalls and seventy-five (75%) of the gross leasable area of the Future Retail Area are operating and open for business to the public. The foregoing alternative rent shall be paid at such times and in the same manner as set forth for Percentage Rent in Article IV(B)(1) and all other charges shall continue to be paid as set forth in the Lease.

{¶18} The percentage rent in Article IV(B)(1) provides the following:

> **Payment of Percentage Rent**. Tenant recognizes it is a material consideration of Landlord that Tenant provide Landlord periodic statements of Gross Sales (as hereinafter defined) made by Tenant from the Premises during each year of the Lease Term. Tenant shall furnish to Landlord, on or before the twentieth (20th) day of each calendar month, statements of Tenant's Gross Sales (as hereinafter defined) from the Premises for the immediately preceding calendar month. On

or before the thirtieth (30th) day of the month following the end of each lease year, Tenant shall furnish to Landlord a statement certified by a financial officer of Tenant, of the Gross Sales during the preceding lease year, and concurrently shall pay to Landlord the Percentage Rent due, if any. * * *

{¶19} Specifically, the trial court noted that the first phrase in the first line of the co-tenancy provision, namely, "Notwithstanding anything to the contrary contained herein," expressly nullifies "anything" that would otherwise prevent the tenant from getting the full benefit of the co-tenancy provision. Relying on this line, the trial court awarded judgment in favor of Sunglass Hut, finding that it had properly made the election for alternative rent and is entitled to a credit for rent overpaid, which was $69,804.33.

{¶20} We find that the trial court's interpretation of the contract is flawed. In finding that Sunglass Hut could retroactively "elect" to pay the alternative rent, the trial court expressly ignored the provision requiring tenant to pay the alternative rent "at such times and in the same manner as set forth for percentage rent in Article IV(B)(1) * * *." Article IV(B)(1) expressly imposes a deadline of the 30th day of the month following the end of each lease year to pay the percentage rent due. We cannot agree with the trial court's determination that the clause — "notwithstanding anything to the contrary contained herein" — negated everything else in the lease. This clause must be

considered in its context, and we must give effect to every provision of the contract. *See Sunoco, Inc. v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285.

**{¶21}** One logical interpretation of this clause — and one that would not negate the sentence immediately following it in the same provision —  is that the "alternative rent" trumps the "minimum rent and percentage rent" if (1) less than 75 percent occupancy threshold is met, and (2) the tenant elects to exercise it.  By virtue of incorporating the due date for payment of percentage rent into the co-tenancy clause, however, it is not clear that the tenant could retroactively "elect" this rent two years later, after the effective due date of payment.  The due date of payment could be reasonably construed as requiring a payment of the alternative rent after "each lease year," thereby requiring that the election be made beforehand and by the end of each lease year.

**{¶22}** But on the other hand, the lease does not expressly state an election deadline or contain a waiver clause if the tenant pays the minimum rent.  The co-tenancy provision could reasonably be construed as simply requiring the alternative rent to be paid the 30th of the month following the end of each lease year *after* the election has been paid.  And while a retroactive election appears to be the only way that the tenant could reap the benefit of paying less rent when the plaza does not meet its occupancy threshold, we cannot say that the contract clearly and unambiguously sets this out.  We find that reasonable minds could reach differing conclusions as to the deadline

to elect to pay the alternative rent. And the answer does not appear to lie in the four corners of the lease.

{¶23} We further note that the contract is silent as to any duty of notifying the tenant of the occupancy threshold levels on the landlord's part or a duty to inquire on the tenant's part. While we are cognizant that principles of contract interpretation preclude us from rewriting the contract by reading into it language or terms that the parties omitted, we find that the absence of these terms adds to the confusion of when the alternative rent could be elected. *See Inland Refuse Transfer Co.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (summary judgment was improper because the contract was silent as to the termination date and otherwise ambiguous in determining the termination date — reasonable minds could differ as to the governing date).

{¶24} Finding that the contract is ambiguous, we find that the granting of summary judgment based on the four corners of the contract was improper. We sustain DDR's first assignment of error to the extent that the trial court awarded summary judgment in favor of Sunglass Hut, but overrule the second assignment of error, finding that DDR is not entitled to summary judgment either. The clear intent of the parties and time for election cannot be ascertained on the face of the contract. The matter therefore must be resolved by the consideration of extrinsic evidence to be decided by the trier of fact.

<u>Attorney Fees</u>

{¶25} In DDR's final assignment of error, it argues that the trial court erred in awarding attorney fees to Sunglass Hut as the prevailing party. Having sustained the first assignment of error, we agree that the award of attorney fees must be vacated at this time.

{¶26} Judgment affirmed in part, reversed in part, and this case is remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellees and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
EILEEN T. GALLAGHER, J., CONCUR