[Cite as *Westlake v. VWS, Inc.*, 2014-Ohio-1833.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100180

## CITY OF WESTLAKE

PLAINTIFF-APPELLANT

vs.

## VWS, INC., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-790603

**BEFORE:** S. Gallagher, J., Boyle, A.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** May 1, 2014

**ATTORNEYS FOR APPELLANT**

John D. Wheeler
Director of Law
Robin R. Leasure
Sean F. Kelleher
Assistant Directors of Law
City of Westlake
27700 Hilliard Blvd.
Westlake, OH   44145


**ATTORNEYS FOR APPELLEE**

**For VWS, Inc., et al.**

T. Christopher O'Connell
Michael R. Stavnicky
Singerman, Mills, Desburg & Kauntz Co., L.P.A.
3333 Richmond Road
Suite 370
Beachwood, OH    44122

**For Board of Education of Westlake City Schools**

Bill J. Gagliano
Ulmer & Berne, L.L.P.
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, OH   44113

**For Cleveland-Cuyahoga County Port Authority**

Dennis R. Wilcox
Climaco, Wilcox, Peca, Tarantino & Garofoli Co., L.P.A.
55 Public Square, Suite 1950
Cleveland, OH   44113

**For Cleveland Metroparks**

Rosalina M. Fini
Law Director
Cleveland Metroparks
4101 Fulton Parkway
Brooklyn, OH   44144

**For Cuyahoga Community College**

Mike DeWine
Ohio Attorney General
By: Holly E. LeClair
Assistant Attorney General
Education Section
30 East Broad Street, 16th Floor
Columbus, OH   43215

**For Cuyahoga County Fiscal Officer, et al.**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Brian R. Gutkoski
Assistant Prosecuting Attorney
Justice Center - 8th Floor
1200 Ontario Street
Cleveland, OH    44113

SEAN C. GALLAGHER, J.:

{¶1} Plaintiff-appellant city of Westlake, Ohio ("Westlake"), appeals the decision of the Cuyahoga County Court of Common Pleas that denied its motion for summary judgment and granted the cross-motion for summary judgment of defendants-appellees VSM Sewing, Inc. For the reasons stated herein, we reverse the judgment of the trial court, grant summary judgment in favor of Westlake in the amount of $359,913, and remand the matter to the trial court.

{¶2} On September 4, 2012, Westlake filed a complaint for money damages against VSM Sewing, Inc., and VWS, Inc. (collectively referred to herein as "VSM").[1] The complaint raised a claim for breach of contract arising from a community reinvestment area agreement ("CRA Agreement") entered on May 5, 1998, between Westlake and VWS, Inc., which is now known as VSM Sewing, Inc.

{¶3} The CRA Agreement set forth VSM's desire to construct a new 100,000 square foot facility in Westlake's community reinvestment area provided that appropriate development incentives were made available. It also set forth Westlake's understanding that "[VSM] is qualified by financial responsibility and business experience to create and preserve employment opportunities in said Community Reinvestment Area and improve the

---

[1] The complaint also named VSM Group, A.B., as a defendant, but this party was voluntarily dismissed from the action by Westlake. Also named to the action, because of their potential interest in any recovery by Westlake, were the Cuyahoga County Fiscal Officer, the Board of Education of the Westlake City Schools, Westlake Porter Public Library, Cleveland Metroparks, Cleveland-Cuyahoga County Port Authority, and Cuyahoga Community College.

economic climate of Westlake." The CRA Agreement contained mutual covenants agreed to between the parties and provided for a 15-year tax-exemption period.

{¶4} The CRA Agreement was entered pursuant to and in conformance with R.C. 3735.671, following application by VSM pursuant to R.C. 3735.67. Pursuant to R.C. 3735.67(D)(1), exemptions may be granted for the construction of new commercial structures located within a community reinvestment area for a period determined by the legislative authority, but not exceeding 15 years. R.C. 3735.671 provides for the written agreement for the exemption from taxation of commercial or industrial property located in a community reinvestment area. It specifically states that the written agreement is "binding on both parties for a period of time that does not end prior to the end of the period of the exemption" and shall include "all of the information and statements prescribed by this section." R.C. 3735.671(A). Further, the statute permits parties to include additional terms, provided they "in no way derogate from the information and statements prescribed by this section." *Id.*

{¶5} The CRA Agreement contained the prescribed language, as well as additional terms. Relevant sections of the CRA Agreement were as follows.

{¶6} Section 1 of the CRA Agreement provided for the construction of the 100,000 square foot facility to be leased by VSM and set forth VSM's obligations for the purchase and installment of new machinery and equipment.

{¶7} Section 2 of the CRA Agreement contained VSM's hiring schedule, under which VSM agreed that it would increase its number of employees over five years, thereby

benefitting Westlake with increased payroll and income tax revenue. Section 2 provides the

following:

> Applicants' schedule for hiring is as follows: * * * A total number of twenty-six (26) new full-time jobs and two (2) new part-time jobs will be created by the end of the year 2003. * * *.

> The increase in the number of employees will result in approximately Nine Hundred Ninety-Eight Thousand Dollars ($998,000.00) of additional payroll over five (5) years for [VSM]. The retention of the existing jobs will maintain the current payroll of Two Million One Hundred Ninety-Three Thousand Dollars ($2,193,000.00).

{¶8} Section 3 of the CRA Agreement provides in part that VSM "shall make its best

efforts" to ensure at least 25 percent of the new employees are residents of Westlake and that

VSM "will create one or more temporary internship positions for students" enrolled within

the Westlake School District.

{¶9} Section 4 of the CRA Agreement contains tax incentives offered by Westlake,

providing in relevant part:

> Westlake hereby grants [VSM] a tax exemption for real property improvements made to the Project Site pursuant to Section 3735.67 of the Ohio Revised Code and shall be for fifteen (15) years at a tax exemption amount of fifty percent (50%). *As a condition of this tax exemption*, [VSM's] income payroll tax must be eighty percent (80%) of the amount projected herein or the abatement will be subject to amendment of the terms of this Agreement or Westlake may rescind the tax exemptions granted herein.

> The exemption commences the first year for which the real property would first be taxable were the property not exempted from taxation. *No exemption shall commence before December 31, 1998 nor extend beyond December 31, 2013.*

(Emphasis added.)

{¶10} Under Section 5 of the CRA Agreement, VSM agreed to pay an annual fee to Westlake.

{¶11} Section 6 of the CRA Agreement requires VSM to pay non-exempted real property taxes and to file all tax reports and returns required by law. The failure to do so results in "all incentives granted under this Agreement are rescinded beginning with the year for which such taxes are charged or such reports or returns are required to be filed and thereafter."

{¶12} Section 9 of the CRA Agreement sets forth Westlake's rights in the event of a material breach and contains what is referred to as a "clawback" provision:

> If [VSM] materially fails to fulfill its obligations under this Agreement * * * , Westlake may terminate or modify the exemptions from taxation granted under this Agreement and may require the repayment from the Applicant of the amount of taxes that would have been payable had the property not been exempted from taxation under this Agreement.

{¶13} VSM commenced operations in Westlake in 1999 and remained there until late 2008 or early 2009, when it closed its Westlake facility and moved its headquarters out of Ohio. VSM met or exceeded the income payroll tax level for tax years 1999 through 2008 and received a real property tax abatement for those years.

{¶14} Westlake claims that VSM breached the CRA Agreement by closing its facility and thereby failing to fulfill its contractual obligations to increase and maintain employees,

payroll and payroll income tax, and to pay an annual fee to Westlake. Westlake's position is that VSM only met its obligations for ten years of the 15-year agreement and that there was a complete failure of material obligations when VSM closed its operations and reduced its payroll to zero.

{¶15} On or about May 6, 2010, Westlake's city council passed ordinance No. 2010-66, which reduced the abatement percentage for VSM to 0 percent and revoked all abatement exemptions previously granted to VSM. Westlake Ordinances 2010-66. Thereafter, Westlake filed this action for breach of contract. Under the complaint, Westlake sought to recover exempted taxes and annual unpaid fees in the amount of $363,767.38.

{¶16} Westlake filed a motion for summary judgment, and VSM filed a cross-motion for summary judgment. In moving for summary judgment, Westlake sought damages in the amount of $359,913.00 and submitted an affidavit of Robert Parry, Director of Planning and Economic Development of the city of Westlake, with supporting documentation.

{¶17} In their motions, the parties agreed that the CRA Agreement was unambiguous and presented a question of interpretation for the court. The trial court denied Westlake's motion and granted VSM's cross-motion. The trial court found in part as follows:

> VSM did not breach the Agreement by remaining in Westlake only ten to eleven years of the fifteen years of tax abatement. The provision of the Agreement requiring VSM to maintain payroll tax at a minimum of 80 percent was a condition precedent. Failure to meet this threshold resulted in VSM not receiving a tax exemption but does not constitute a breach of the Agreement. There is no set minimum duration which required VSM to perform any task including remaining in Westlake. Westlake does not argue that VSM did not meet any of its obligations which resulted in a breach invoking Section 9 prior to leaving Westlake. As a result, the court finds there is no genuine issue of fact as to whether VSM breached the agreement with the city.

**{¶18}** Westlake timely filed this appeal. Westlake's sole assignment of error is as follows:

> The trial court erred in finding defendants did not breach the tax abatement agreement between the city of Westlake and VWS, Inc. when it ceased operations within the city and moved its corporate headquarters out of the city of Westlake and the state of Ohio prior to the expiration of the agreement.

**{¶19}** Appellate review of summary judgment is de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Additionally, the construction of a written contract presents a question of law that is reviewed de novo. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9. The intent of the parties is presumed to be reflected within the language used in the written instrument. *Id*. at ¶ 9.

> Where the parties following negotiation make mutual promises which thereafter are integrated into an unambiguous contract duly executed by them, courts will not give the contract a construction other than that which the plain language of the contract provides.

*Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 544 N.E.2d 920 (1989), paragraph one of the syllabus.

**{¶20}** The facts of this case are undisputed, and resolution of the matter involves the construction of the CRA Agreement. Westlake claims the trial court erred in finding VSM failed to satisfy a condition precedent, as opposed to materially breaching the CRA Agreement, by failing to remain in the Westlake facility. Westlake argues that there was a material failure of performance through VSM's act of closing its Westlake operation and

reducing its employment level to zero. Westlake states that VSM completely deprived Westlake of the income tax revenue it reasonably expected to receive through the entire 15-year exemption period.

**{¶21}** The trial court determined there was no set minimum duration for VSM to remain in Westlake. We recognize the trial court relied upon the lack of a specific provision in the CRA Agreement requiring VSM to continue its operations for a specific duration of time. However, the 15-year exemption period was fundamental to the agreement and the parties' performance. The CRA Agreement included Westlake's understanding that VSM would create and preserve employment opportunities in the community reinvestment area. VSM promised to increase its payroll and income taxes to Westlake in exchange for Westlake's promise to provide the 15-year tax-exemption period. The parties thereby expressed an intent to perform for 15 years under the CRA Agreement.

**{¶22}** Further, the parties were statutorily bound to perform through the end of the exemption period. R.C. 3735.671(A). Section 4 of the CRA Agreement provided "[n]o exemption shall commence before December 31, 1998 nor extend beyond December 31, 2013." The obligations created under the CRA Agreement were mutually agreed upon promises that were binding upon both parties for the entire tax-exemption period.

**{¶23}** Pursuant to Section 4 of the CRA Agreement, as a "condition of this tax exemption" VSM was required to maintain income payroll tax at 80 percent of the projected amount. If the threshold was not met, the abatement was subject to either amendment or

rescission. The trial court found this created a condition precedent and that the failure of the condition could not amount to a breach of contract.

{¶24} Under basic contract law, "[a] condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Restatement of the Law 2d, Contracts, Section 224 (1981). A condition precedent is an event that must take place before a duty to perform arises. *Atelier Dist. v. Parking Co. of Am., Inc.*, 10th Dist. Franklin No. 07AP-87, 2007-Ohio-7138, ¶ 35. "Whether a provision in a contract is a condition precedent is a question of the parties' intent. Intent is ascertained by considering not only the language of a particular provision, but also the language of the entire agreement and its subject matter." *Troha v. Troha*, 105 Ohio App.3d 327, 334, 663 N.E.2d 1319 (2d Dist.1995). Conditions precedent are not favored under contract law and will not be found unless the agreement plainly shows an intent to the contrary. *Campbell v. George J. Igel & Co.*, 4th Dist. Hocking No. 13CA4, 2013-Ohio-3584, ¶ 13.

{¶25} Here, even if we viewed the 80-percent threshold as a condition to performance under the contract, VSM would not be excused from performing because it caused the failure of the condition. A party is not excused from its contractual obligations when the condition is in its best interest and sole responsibility. *Atelier* at ¶ 37. Put simply, a party to a contract may not rely upon the failure of a condition that the party's own action or inaction caused to occur. *See Gulf Oil Corp. v. Am. Louisiana Pipe Line Co.*, 282 F.2d 401, 404-405 (6th Cir.1960).

{¶26} Additionally, a review of the CRA Agreement shows the parties did not intend to excuse the performance of their contractual obligations. It is clear from a review of the entire agreement that a mutual exchange of promises was intended by the parties. VSM agreed to conduct operations at a new facility constructed in Westlake and to provide 80-percent of the promised income payroll tax in exchange for the agreed-upon 15-year tax exemption. These bargained-for promises were fundamental to the agreement.

{¶27} VSM was obligated to perform for the entire term of the agreement. The failure to meet the 80-percent threshold authorized Westlake to amend or rescind the exemptions. It did not call for a termination of the CRA Agreement. This was consistent with Section 6 of the CRA Agreement, which provided that if VSM failed to pay the non-exempt real property taxes that were owed, then the tax abatement would be rescinded "beginning with the year for which such taxes are charged."

{¶28} Under Section 2 of the CRA Agreement, VSM agreed that it would retain its existing jobs and maintain the current payroll, in addition to increasing its number of employees over five years, resulting in additional payroll. Further, pursuant to Section 3 of the CRA Agreement, VSM was required to make its best efforts to ensure that at least 25 percent of its employees were residents of Westlake and provide a Westlake internship. By ceasing its operations in Westlake, VSM failed to fulfill its contractual obligations through the entire term of the CRA Agreement. The trial court found that these alleged breaches arose from VSM's closing its operations in Westlake and were first raised in Westlake's reply in support/opposition to cross-motion for summary judgment. Our review reflects that

Westlake maintained throughout its pleadings that by closing its operations and moving out of Westlake, VSM failed to fulfill its obligations under the CRA Agreement. Moreover, we find these provisions are relevant to ascertaining the intent of the parties and whether a material breach of the contract occurred.

{¶29} Section 9 of the CRA Agreement authorized Westlake to exercise the clawback option if a material breach occurred. "A 'material breach of contract' is a failure to do something that is so fundamental to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform." *Marion Family YMCA v. Hensel*, 178 Ohio App.3d 140, 2008-Ohio-4413, 897 N.E.2d 184, ¶ 7 (3d Dist.).

{¶30} We would agree that the failure to meet the 80-percent threshold in any given year despite good-faith efforts to do so would not have been a material breach for purposes of the clawback provision. However, by closing its operations, VSM abandoned its contractual obligations and made it impossible for Westlake to perform. Westlake was deprived of income tax revenue it reasonably expected to receive through the 15-year exemption period. The essential purpose of the contract was defeated. Moreover, it cannot be said that VSM substantially performed under the contract when it completely failed to perform for five of the fifteen years required. Because VSM materially breached the agreement, Westlake was entitled to invoke the clawback provision.

{¶31} Accordingly, we reverse the judgment of the trial court and grant summary judgment in favor of Westlake in the amount of $359,913.00. The case is remanded to the

trial court to enter judgment in favor of Westlake and to determine the respective interests of all other defendants as it relates to plaintiff's claim.

**{¶32}** Judgment reversed; case remanded.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., CONCURS;
KENNETH A. ROCCO, J., DISSENTS (WITH SEPARATE OPINION)

KENNETH A. ROCCO, J., DISSENTING:

**{¶33}** I respectfully dissent from the majority opinion's disposition of this appeal. In my view, the CRA Agreement is subject to more than one reasonable interpretation; therefore, summary judgment should not have been granted by the trial court in favor of VSM or by this court in favor of Westlake.

**{¶34}** When faced with an issue of contract interpretation, a court must give effect to the intent of the parties as reflected in the language of the contract. *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 637, 597 N.E.2d 499 (1992). A contract is construed as a

matter of law if the contract is "clear and unambiguous." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). The meaning of an ambiguous contract, however, is an issue of fact to be decided by the trier of fact. *Brown v. Columbus All-Breed Training Club*, 152 Ohio App.3d 567, 2003-Ohio-2057, 789 N.E.2d 648, ¶ 18 (10th Dist.). A contract is ambiguous if it is "susceptible to more than one reasonable interpretation." *Michael A. Gerard, Inc. v. Haffke,* 8th Dist. Cuyahoga No. 98488, 2013-Ohio-168, ¶ 11, citing *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 52 Ohio St.3d 174, 177, 556 N.E.2d 1186 (1990).

{¶35} The CRA Agreement is inartfully drafted. While the CRA Agreement includes form language specified in R.C. 3735.671, as required by law, the key provision at issue, section 4 of the CRA Agreement, is not part of the form language specified by the statute.

{¶36} Section 4 of the Agreement states that VSM must maintain the 80% income payroll tax threshold "[a]s a condition of [the] tax exemption" granted by Westlake. Section 4 further provides that if the income payroll tax threshold is not met, "the abatement will be subject to amendment of the terms of this Agreement or Westlake may rescind the tax exemptions granted herein." Section 4 does not reference the "clawback" provision in section 9, and there is nothing in section 4 or any other section of the CRA Agreement that expressly requires VSM to maintain the 80% income payroll tax threshold for the entire 15-year tax-exemption period in order to receive (and retain) a tax exemption for years in which the threshold was met. Reading the CRA Agreement as a whole and giving effect to

all of the language used by the parties, I believe the agreement is ambiguous as to VSM's obligations under the CRA Agreement, in particular VSM's obligations with respect to the income payroll tax threshold in section 4 of the agreement and the consequences of VSM's failure to meet that threshold in any given year.

{¶37} The majority opinion acknowledges that the CRA Agreement contains no "specific provision * * * requiring VSM to continue its operations for a specific duration of time." Nevertheless, based on its determination that "the 15-year exemption period was fundamental to the agreement and the parties' performance," the majority reads into the agreement an "intent to perform for 15 years under the CRA Agreement" and, then, based on that presumed intent, interprets the agreement as setting forth "mutually agreed upon promises that were binding upon both parties for the entire tax-exemption period." In the absence of an express provision obligating VSM to perform for a specific duration, I do not believe that it is the role of this court to construe the CRA Agreement, as a matter of law, as obligating VSM to maintain the income payroll tax threshold specified in section 4 of the agreement for the entire 15-year tax-exemption period. *DDR Rio Hondo, L.L.C. v. Sunglass Hut Trading, L.L.C.*, 8th Dist. Cuyahoga No. 98986, 2013-Ohio-1800, ¶ 24 ("principles of contract interpretation preclude us from rewriting the contract by reading into it language or terms that the parties omitted"). Although the majority's interpretation may be one reasonable interpretation of the CRA Agreement, I do not believe it is the only reasonable interpretation of the agreement as drafted. Where a contract is ambiguous, and "[t]he clear intent of the parties * * * cannot be ascertained on the face of the contract," the granting of

summary judgment "based on the four corners of the contract" is improper, and the matter "must be resolved by the consideration of extrinsic evidence to be decided by the trier of fact." *Id.* at ¶ 24; *see also Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322-324, 474 N.E.2d 271 (1984).

{¶38} Based on my belief that the CRA Agreement is ambiguous and that a genuine issue of material fact, therefore, exists as to whether VSM materially breached the CRA Agreement, I would find that the trial court should have denied both parties' motions for summary judgment. Accordingly, I would sustain Westlake's assignment of error to the extent Westlake contends that the trial court erred in entering summary judgment in favor of VSM. However, I would find that Westlake is not entitled to summary judgment either and would remand the case so that the issue of liability may be properly determined by the trier of fact.