**MARION FAMILY YMCA, Appellee,**

v.

**HENSEL, Appellant.**

[Cite as *Marion Family YMCA v. Hensel,* 178 Ohio App.3d 140, 2008-Ohio-4413.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–07–52.

Decided Sept. 2, 2008.

Todd A. Anderson, for appellee.

Kevin P. Collins, for appellant.

WILLAMOWSKI, Judge.

{¶ 1} Defendant-appellant, Kevin Hensel, brings this appeal from the judgment of the Court of Common Pleas of Marion County in favor of plaintiff-appellee, Marion Family YMCA. For the reasons set forth below, the judgment is reversed.

{¶ 2} In 2004, the YMCA, through its representative, Ted Graham, entered into negotiations with Hensel through his representative, Nick Wall, for the purchase of the old YMCA facility. Eventually, a contract was signed for the purchase of the building at a price of $250,000. Both Graham and Hensel signed the contract on April 29, 2004. After the contract was signed, Hensel toured the facility and noted that a wall of lockers had been removed. The lockers had been slid off the bolts, some of the bolts had been cut, and Hensel noticed that some of the tiles had been broken. Hensel considered this to be a breach of the contract and told Wall that the contract was terminated. Wall contacted Graham about the missing lockers and terminating the contract. Graham then contacted the building manager and had the lockers returned. Graham then told Wall that the lockers would be returned. However, Hensel claims that he was not informed of the restoration of the lockers.

{¶ 3} The YMCA proceeded with the sale by retaining an attorney to complete the closing. When the closing was not held within 30 days, the attorney wrote Hensel, stating that the closing needed to be scheduled. A second letter was sent on August 2, 2004, again requesting that the closing be scheduled immediately or the property would be listed for sale again. No further action was taken by the attorney to resolve the matter.

{¶ 4} After the sale to Hensel fell through, the YMCA offered the building to Graham and Komako L.L.C., which was owned by William and Bret Bowers.[1] The building was not listed through any realtor, and no advertising of the property occurred. Komako eventually offered to purchase the facility for $125,000. Komako placed a three-day limit on the offer. The YMCA accepted the offer without a counteroffer. However, the board of the YMCA did discuss that they could recover the price difference from Hensel.

{¶ 5} On May 13, 2005, the YMCA filed a complaint to recover the difference between the Hensel contract and the final sales price. Hensel filed his answer and cross-claim on July 5, 2005. A trial was held on the matter on July 31, 2007. A jury then returned a verdict in favor of the YMCA in the amount of $125,000. Hensel appeals from this judgment and raises the following assignments of error.

### First Assignment of Error

The manifest weight of the evidence establishes a material breach by [the YMCA].

### Second Assignment of Error

The manifest weight of the evidence establishes a failure by [the YMCA] to mitigate damages.

{¶ 6} When determining whether a civil judgment is against the manifest weight of the evidence, "the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice." *Bilder v. Main Paint & Auto Body* (Feb. 20, 2002), 9th Dist. No. 20723, 2002 WL 242110, *1.

> Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse and order a new trial. * * * Additionally, it is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts."

Id., quoting *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 7} In the first assignment of error, Hensel claims that the YMCA materially breached the contract by removing the lockers. Generally, a material breach of contract will entitle a party to stop performance. *Nious v. Griffin Constr., Inc.*, 10th Dist. No. 03AP–980, 2004-Ohio-4103, 2004 WL 1752872, ¶ 16. A "material breach of contract" is a failure to do something that is so fundamen-

---

1. Bowers was a board member of the YMCA at the time of the offer and purchase.

tal to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform. Williston on Contracts, Chapter § 63:3.

{¶ 8} In this case, the contract stated as follows:

> The property shall include the land, all appurtenant rights, privileges, and easements of record and all buildings and fixtures in their present condition, including such of the following as are now on the property: all electrical, heating, plumbing and bathroom fixtures, all window and door shades, blinds, awnings, screens, storm sash, curtain rods, TV antenna, all landscaping * * *.

Hensel claims that the lockers were fixtures and that the removal of the lockers was a breach of the contract. However, the time for closing had not yet occurred, which means that the YMCA still had time to perform the contract. The YMCA returned the lockers. Thus, the alleged breach by the YMCA did not prevent the performance of an essential element of the contract and did not interfere with Hensel's ability to perform. Until the time of closing, the YMCA had the right to remedy any nonmaterial breach, which it did. Therefore, the jury did not err in finding that the removal of the lockers was not a material breach of the contract.

{¶ 9} Hensel also claims that the contract permits him to terminate the agreement because the lockers were improvements that were damaged or destroyed prior to the delivery of the deed. The contract provides as follows.

> If any buildings or other improvements are damaged or destroyed prior to the delivery of deed, Purchaser shall have the option (a) to receive the proceeds of any insurance payable in connection therewith or (b) to terminate this agreement.

Clauses of this type are generally applied when real property is damaged or destroyed in such a manner as to interfere with the purpose for which the property is being purchased. *Rosepark Properties, Ltd. v. Buess*, 167 Ohio App.3d 366, 2006-Ohio-3109, 855 N.E.2d 140, citing *Drake v. Burch* (May 27, 1982), Franklin App. No. 82AP–19.

{¶ 10} In *Drake*, the trial court was required to determine whether the removal of shrubbery from the landscaping permitted termination of the contract. The contract was similar to the one in this case and provided as follows.

> Risk of loss to the real estate and appurtenances shall be borne by Seller until closing provided that if any property covered by this contract shall be substantially damaged or destroyed before this transaction is closed, the Buyer may (a) proceed with the transaction and be entitled to all insurance money, if any, payable to the Seller under all policies covering the property, or (b) rescind the contract, and thereby release all parties from liability hereunder by

giving written notice to the Seller and Broker within ten (10) days after the Buyer has written notice of such damage or destruction.

*Drake,* supra, at *2. The court in *Drake* found that the removal of the shrubbery and flowers was minimal in that it did not change the character and condition of the property and did not exceed $250 in value. Due to the removal, the buyer rescinded the contract, even though the seller offered to reimburse the buyer for the damage. The buyer claimed that they had the right to rescind because the condition of the property was not exactly as it had been when the contract was signed. The seller claimed that since no substantial change to the property as a whole had occurred, the buyer did not have the right to rescind the contract. In the alternative, the seller claimed that they had attempted to remedy the change by offering to pay for the damage. The court disagreed with both of these claims, finding that the buyer was not required to accept the property in a different condition from that which they had contracted and had the option of terminating the contract immediately upon the change to the property.

{¶ 11} The *Drake* holding was restated in *Rosepark,* supra, 167 Ohio App.3d 366, 2006-Ohio-3109, 855 N.E.2d 140. In *Rosepark,* a contract provision identical to that in *Drake* was at issue. The *Rosepark* court held that it need not be substantial damage or destruction to the property as a whole to trigger the right to rescind the contract. Id. at ¶ 25. Instead, it was substantial damage or destruction of any portion of the property that triggered the right to rescind. The court also held that improvements and fixtures can constitute property within the contemplation of the rescission provision of the contract. Id. at ¶ 31. The *Rosepark* court then reversed the decision of the trial court finding that substantial damage to a portion of the property was sufficient to permit the buyer to rescind the contract.

{¶ 12} A review of the contract in this case indicates that the rescission contract differs from those in *Drake* and *Rosepark* in that it does not require substantial damage or destruction. Instead, the plain language of the contract states that if "any buildings or other improvements are damaged or destroyed" before closing, the buyer has the option to rescind the contract. The lockers at issue may be fixtures because they were bolted to the walls and floors. Even if they are not fixtures, they are improvements to the building. Thus, they are covered by the plain language of the contract. By removing the lockers from the premises, the property was altered with the same effect as if they were destroyed, i.e., they were no longer available for use. Testimony was also presented that bolts had been cut and that tiles may have been broken. Although this damage is in no way the type that would be defined as substantial damage, the contract does not require that. The contract in this case merely states that if there is damage, the buyer has the right to terminate the contract.

The contract does not require the buyer to give the seller time to cure. At the time Hensel inspected the building and noticed the damage, regardless of how minimal, Hensel had the right to rescind the contract. Hensel chose to do so, and the YMCA was notified of this choice immediately. This terminated the contract, and any subsequent actions by the YMCA to remedy the situation did not restore the contract. Therefore, Hensel had the right to terminate the contract as a matter of law. His termination was not a breach of the contract, and the trial court erred in holding otherwise. The first assignment of error is sustained.

{¶ 13} The second assignment of error alleges that the YMCA failed to properly mitigate its damages. Having found that Hensel did not breach the contract, the question of mitigation of damages is moot. Therefore, this court need not address the second assignment of error.

{¶ 14} The judgment of the Court of Common Pleas of Marion County is reversed, and the matter is remanded.

Judgment reversed
and cause remanded.

SHAW, P.J., and PRESTON, J., concur.