[Cite as *Alloush v. Physician Cardiovascular Venture, L.L.C.*, 2013-Ohio-2400.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| DR. NABIL M. ALLOUSH, M.D., | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2011-T-0112** |
| PHYSICIAN CARDIOVASCULAR VENTURE, LLC, | : | |
| | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas.
Case No. 2009 CV 2827.

Judgment: Reversed and remanded.

*David S. Swader* and *Daniel B. Letson*, Letson & Swader Co., L.P.A., 160 East Market Street, Suite 250, Warren, OH 44481 (For Plaintiff-Appellee).

*Marshall D. Buck*, Comstock, Springer & Wilson, 100 Federal Plaza East, Suite 926, Youngstown, OH 44503-1811 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1}  Appellant, Physician Cardiovascular Venture, LLC ("PCV"), appeals the summary judgment of the Trumbull County Court of Common Pleas in favor of appellee, Dr. Nabil M. Alloush, M.D., in the amount of $186,343.50, plus interest, for breach of contract.  For the following reasons, the judgment is reversed and remanded.

{¶2}  Dr. Alloush, a cardiologist, purchased 20 membership units in PCV, the terms of which were controlled by an operating agreement.  PCV jointly owns and

operates cardiac catheterization labs in Youngstown, Ohio, with Humility of Mary Health Partners and provides numerous medical-organization services, such as administrative and management services. Members of PCV are required to continually meet certain membership criteria, as provided by the operating agreement. One such requirement states that members must be in good standing, with appropriate clinical privileges, on the medical staff of St. Elizabeth Health Center ("the Health Center"). Section 6.2(b) of the operating agreement states:

{¶3} The Cardiologist, Qualified Interventional Radiologist, or at least a majority of the Affiliated Physicians of the Qualified Entity, as the case may be, must maintain membership in good standing, with appropriate clinical privileges, in accordance with the Medical Staff Bylaws, on the Medical Staff of St. Elizabeth Health Center, or must obtain such membership within six (6) months after being admitted as a Member (or, with respect to an Affiliated Physician, 6 months after his or her Qualified Entity is admitted as a Member).

{¶4} A member may withdraw from PCV with 30 days written notice to the company upon a "triggering event," such as retirement. Upon successful withdrawal, a member's interest is paid pursuant to a formula amount. The "formula amount" is defined as three times the member's average, pre-tax net income for the previous two fiscal years of the company, attributable to the member's ownership. A fiscal year is defined as the calendar year. Section 7.3(b) of the operating agreement states:

{¶5} A Member (or the Member's estate or personal representative on behalf of the Member) shall have the right to voluntarily withdraw

2

from the Company, with thirty (30) days prior written notice to the Company, upon the death, Retirement or Permanent Disability of such Member (each a 'Triggering Event').  A Member (or his or her estate or personal representative) shall provide the Governing Board with prompt written notice of any Triggering Event affecting the Member.  *If (i) the Member does not elect to withdraw from the Company within thirty (30) days after the occurrence with respect to such Member of one of the Triggering Events described above* (or in the event of the death of a Member, his or her estate or personal representative does not make such an election); and (ii) such Triggering Event results in the Member failing to continue satisfying the Membership Criteria in §6.2, the Company shall have the right (but not an obligation), upon written notice to the Member or his or her estate or personal representative, to purchase all of the Units of such Member.  In the event the Company does not elect, through vote of the Governing Board, to purchase such Units, the Member shall be permitted to remain as a Member, despite the fact that he or she no longer satisfies the Membership Criteria.

{¶6}   Upon the withdrawal of a Member, or the Company's election to purchase a Member's Units, pursuant to this subsection (b), such Member (or his or her estate or personal representative) shall receive, in full payment and satisfaction for any interest in the Company, an amount equal to the greater of (x) the total Capital

3

Contributions made by the Member to the Company pursuant to §2.1 and §2.2; or (y) the Formula Amount (as defined in §7.5), unless such withdrawal is due to the Retirement of the Member occurring within the first 2 years after the Member purchased Units in the Company, in which case the Member shall receive the lesser of (x) or (y). Subject to §7.5, such amount shall be paid in cash within two (2) years following the date of the Triggering Event. (Emphasis added.)

{¶7} "Retirement" is defined as a complete discontinuation of one's practice of medicine. Section 1.9(ff) of the operating agreement reads as follows:

{¶8} Retirement means, with respect to any Member, the Member has completely discontinued his or her practice of medicine or, if the Member wishes to continue a part-time office practice, the terms thereof have been agreed to in writing by the Company Governing Board.

{¶9} "Practice of medicine" is not defined in the agreement.

{¶10} The operating agreement also allows for expulsion of a member upon the occurrence of an event as set forth in Section 6.5. In the event of expulsion, the formula amount is not applied; instead, the member's interest in PCV is paid at a punitive rate of $10 per unit. A member cannot be expelled based solely on the failure to continue satisfying the membership criteria as a result of a triggering event. Specifically, Section 6.5 of the operating agreement states:

{¶11} Expulsion. A Member may be expelled from the Company by the Governing Board by the affirmative vote of at least 75% of the

4

Managers for the Member's failure to abide by this Agreement (including, without limitation, failing to continue to satisfy the Membership Criteria set forth in §6.2 or comply with the covenants in §6.3), or any other rules and regulations of the Company. If a Member is expelled from the Company pursuant to this §6.5, unless otherwise required by applicable law, the former Member shall receive, in full satisfaction of any interest in the Company, Ten Dollars ($10.00) per Unit. Subject to §7.5, any amount owed to a Member pursuant to this §6.5 shall be paid in cash within two (2) years following the date of the Member's expulsion.

{¶12} *Notwithstanding the foregoing, a Member may not be expelled based solely on the Member's failure to continue satisfying the membership criteria as a result of a Triggering Event (as defined in §7.3(b)) or a Practice Relocation (as defined in §7.3(c)), which shall be governed by the provisions of §7.3(b) and §7.3(c), respectively, unless such failure involves the Member's violation of §6.3. A Member is not entitled to a due process hearing prior to a decision on the Member's expulsion; however, the Member shall have the right to address the Members at a meeting prior to any such decision.* (Emphasis added.)

{¶13} Dr. Alloush resigned from the staff of the Health Center. PCV, which did not receive the requisite notice of the resignation, ultimately discovered Dr. Alloush's change in status at the Health Center. PCV found Dr. Alloush's resignation violated the

5

terms of the operating agreement, as he failed to meet the membership criteria and no triggering event had occurred. Consequently, Dr. Alloush's interest was paid out by PCV at $200.00 (20 units at $10 per unit) as a "divestment settlement."

{¶14} Dr. Alloush filed a complaint in the Trumbull County Court of Common Pleas. His chief contention was that he *retired* from the practice of medicine—a triggering event that led to his voluntary withdrawal—and was therefore entitled a much greater interest, pursuant to the "formula amount." Dr. Alloush argued that, as PCV was required to purchase his membership units for the formula amount specified in the agreement, but failed to, it was liable under theories of breach of contract, breach of fiduciary duty, conversion, tortious interference with a business relationship, and unjust enrichment.

{¶15} PCV filed a motion for summary judgment, and Dr. Alloush filed a memorandum in opposition. Although he never filed a formal motion for summary judgment, Dr. Alloush argued within the body of his opposition memorandum that he was entitled to judgment as a matter of law. The parties and the trial court treated this as a motion for summary judgment. In addition, the parties argued their points at a hearing before the trial court, and Dr. Alloush filed two supplements to his memorandum in opposition.

{¶16} Upon consideration of the competing motions, the trial court determined that reasonable minds could only conclude that Dr. Alloush retired from the practice of medicine in December 2008 and that the formula amount should have been applied in determining his pay-out interest. The court further found Dr. Alloush's failure to provide "prompt" written notice did not constitute a material breach of the operating agreement

6

or prejudice PCV's interests.  Thus, the trial court held Dr. Alloush was entitled to have PCV purchase his units according to the formula amount, determined to be $186,343.50.

{¶17}  PCV now appeals and raises three assignments of error which, for ease of discussion, will be addressed out of numerical order.  PCV's second assignment of error states:

{¶18}  "The trial court erred as a matter of law by awarding damages to Dr. Alloush because PCV did not breach the Operating Agreement and paid Dr. Alloush all he was entitled to receive under the contract."

{¶19}  PCV argues the trial court erred in deciding that Dr. Alloush was entitled to summary judgment because the evidence demonstrates the cessation of Dr. Alloush's practice in December 2008 did not constitute "retirement"; hence, PCV argues, it did not breach the contract by expelling Dr. Alloush and valuing the membership units at $10 per unit.

{¶20}  Pursuant to Civil Rule 56(C), summary judgment is proper if:

{¶21}  (1) No genuine issue as to any material fact remains to be litigated;

(2) the moving party is entitled to judgment as a matter of law; and

(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.  *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

7

**{¶22}** To prevail on a motion for summary judgment, the moving party has the initial burden to affirmatively demonstrate that there is no genuine issue of material fact to be resolved in the case, relying on evidence in the record pursuant to Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 1996-Ohio-107 (1996). If this initial burden is met, the nonmoving party then bears the reciprocal burden to set forth specific facts which prove there remains a genuine issue to be litigated, pursuant to Civ.R. 56(E). *Id.*

**{¶23}** An appellate court reviews an award of summary judgment de novo, *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996), and applies "the same standard as the trial court, viewing the facts in the case in a light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983). Thus, in reviewing the question of whether summary judgment in favor of Dr. Alloush was proper, we must view all of the evidence in the record in a light most favorable to PCV. *See also Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 88 (1992). ("Civ.R. 56(C) clearly indicates that the evidence considered on summary judgment must be construed in the light most favorable to the party defending the motion. Thus, appellants herein are entitled to have any conflicting evidence construed in their favor.") Moreover, "it is imperative to remember that the purpose of summary judgment is not to try issues of fact, but rather to determine whether triable issues of fact exist." *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 15 (6th Dist.1983).

**{¶24}** Applying these well-founded and long-standing principles, the record before this court demonstrates genuine questions of material fact that cannot be resolved as a matter of law. The question of whether Dr. Alloush breached the

8

operating agreement hinges, in part, on whether it can be concluded that Dr. Alloush's actions constituted the triggering event of retirement, i.e., the complete discontinuation of his practice of medicine.

{¶25} There is conflicting evidence concerning whether Dr. Alloush did, in fact, "retire." Certainly, evidence demonstrates Dr. Alloush resigned his privileges at the Health Center: there is no question he resigned from the medical staff of the Health Center in December 2008. In that same month, he notified his patients via letter that he would be quitting his solo private practice in Warren, Ohio. He closed his office and disposed of his medical equipment. He cancelled his medical malpractice insurance. After his office closed, Dr. Alloush went to Syria for several months.

{¶26} However, there is ample evidence which demonstrates that, though he resigned his post at the Health Center and closed his Warren office, Dr. Alloush had not *retired* from the practice of medicine. He took steps to maintain his active medical license, including meeting the 100-hour continuing medical education requirement and paying the state medical board fees. It is also undisputed that after December 10, 2008, the date of his letter resigning from the Health Center, he continued to write prescriptions and administer care to family members and a limited number of others, as well as see a limited number of patients in Syria for no remuneration. Whether this is tantamount to the practice of medicine is a factual question that cannot be determined as a matter of law, especially because "practice of medicine" is not defined in the operating agreement.

{¶27} Whether any of Dr. Alloush's conduct subsequent to December 2008 constituted "retirement" from "the practice of medicine," as that terminology is used in

9

the operating agreement, is not clear and must be determined by a fact finder. *See, e.g., Motorists Mut. Ins. Co. v. Henderson*, 8th Dist. No. 85557, 2005-Ohio-5148, ¶22 (question of fact existed for jury consideration as to whether a person was a "resident" under agreement for insurance coverage purposes). There is sufficient evidentiary material in the record favorable to PCV that precludes summary judgment on this issue.

**{¶28}** PCV's second assignment of error has merit.

**{¶29}** PCV's first assignment of error states:

**{¶30}** "The trial court erred as a matter of law by holding Dr. Alloush did not materially breach the Operating Agreement, which clearly and unambiguously required him to obtain the written consent of PCV's Governing Board to withdraw his membership, and the record shows that he did not do so."

**{¶31}** PCV contends the trial court erred in determining that Dr. Alloush did not materially breach the operating agreement because the record does not support the conclusion that he retired or complied with the terms of the agreement.

**{¶32}** "The determination of whether a party's breach of a contract was a 'material breach' is generally a question of fact. * * * The reasoning behind this principle is that to determine whether a party's breach was material requires, inter alia, an examination of the parties' injuries, whether and how much the injured parties would or could have been compensated, and whether the parties acted in good faith. * * * All of these inquiries turn on subjective facts." *O'Brien v. Ohio State Univ.*, 10th Dist. No. 06AP-946, 2007-Ohio-4833, ¶11.

**{¶33}** In this case, it cannot be determined as a matter of law that the breach was nominal; construing the evidence in favor of PCV, as we must, suggests the breach

may have been something more. The operating agreement contains a clear duty to notify PCV when a member intends to retire. Dr. Alloush failed to do so. There is no question that prior to his expulsion as a member Dr. Alloush did not inform PCV, formally or informally, that he resigned from the medical staff of the Health Center, thereby no longer meeting membership criteria. The reason for this is unclear. One reason might have been because he wanted to wait until the following year to withdraw in order to receive the benefit of his "formula amount" severance calculation in Section 7.5 of the operating agreement. Another reason might have been because he did not consider himself to be retiring. Indeed, as explained above, there is a factual question concerning whether Dr. Alloush actually did retire from the practice of medicine. Regardless of his motivation, the questions of whether Dr. Alloush did or did not retire and whether he had knowledge in good faith that he was or was not retiring, bear directly on the question of whether a material breach occurred in this case.

{¶34} It is also worth noting a contention raised by Dr. Alloush in his response brief. Dr. Alloush was allowed up to 30 days after the triggering event of retirement to inform PCV of his withdrawal. As noted above, there is no dispute that Dr. Alloush did not inform anybody within 30 days of retirement that he intended to withdraw. However, there is evidence in the record that, despite having informed the hospital of his resignation on December 10, 2008, he wrote a letter to his active patients on December 16, 2008, stating he would cease his solo private practice as of January 16, 2009. Accordingly, he would have had 30 days from January 16, 2009, to inform PCV of his withdrawal, if this was, in fact, "retirement."

11

**{¶35}** However, PCV expelled him pursuant to Section 6.5 on January 16, 2009. Section 6.5 does not permit PCV to expel a member without providing an opportunity to meet with the members prior to an expulsion decision. Nothing in the record demonstrates that PCV permitted Dr. Alloush to address the members prior to expulsion or that he was informed the members were considering such action. PCV did not comply with the notice requirement and thereby breached that provision. Whether that breach by PCV is material is likewise an issue of fact. Moreover, Dr. Alloush cannot be expelled pursuant to Section 6.5 solely for failure to continue satisfying the membership criteria as a result of a triggering event.

**{¶36}** Both parties rely upon provisions of the contract to argue their positions; however, neither party fully complied with the mandates of those clauses. Materiality of breach in this situation is for the jury to decide, and summary judgment for either party at this juncture is improper.

**{¶37}** PCV's first assignment of error is well taken.

**{¶38}** PCV's third and final assignment of error states:

**{¶39}** "The trial court erred as a matter of law by awarding Dr. Alloush $186,343.50 when the proper measure of damages for a Member not in good standing was $10 per unit and Dr. Alloush acknowledged receiving that amount."

**{¶40}** Concerning the issue of damages, PCV contends Dr. Alloush was no longer a member after he resigned his privileges at the Health Center in December 2008. Therefore, PCV argues the two prior years used in the formula amount should be fiscal years 2006 and 2007. However, based on the disposition of the above-framed

12

assignments of error, a discussion of the trial court's computation of damages is not necessary and would be premature.

**{¶41}** PCV's third assignment of error is without merit.

**{¶42}** The judgment of the Trumbull County Court of Common Pleas is hereby reversed and remanded for proceedings consistent with this opinion.


THOMAS R. WRIGHT, J., concurs.

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.


_____


DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

**{¶43}** I dissent from the majority's decision. In the present case, reasonable minds could only conclude that defendant-appellant, Physician Cardiovascular Venture, LLC (PCV), breached the Operating Agreement with plaintiff-appellee, Dr. Nabil M. Alloush, and that he is entitled to damages in the amount of $186,343.50, plus interest.

**{¶44}** The following material facts are undisputed:

**{¶45}** In 2003, Dr. Alloush purchased 20 membership units in PCV.

**{¶46}** In December 2008, Dr. Alloush (at age 58) closed his medical practice, released his employees, and sold/disposed of all of his medical equipment. Dr. Alloush tendered his resignation from the medical staff at St. Elizabeth Health Center. Dr. Alloush duly notified the state medical board and the nuclear regulatory commission that his practice had closed. By 2009, Dr. Alloush had left the country for an extended visit to his native Syria.

13

{¶47} In January 2009, PCV sent Dr. Alloush a letter stating that, "by suspending [his] practice," he was "not in compliance with Section 6.2 of the * * * Operating Agreement." Section 6.2 provides that, to remain a member of PCV, a cardiologist must maintain "clinical privileges * * * on the Medical Staff of St. Elizabeth Health Center."

{¶48} The January 2009 letter further stated that PCV had expelled Dr. Alloush from the company for failing to comply with Section 6.3 of the Operating Agreement. Section 6.3 establishes certain restrictive covenants, preventing company members from practicing cardiac medicine within a seven-county service area.

{¶49} Accompanying the January 2009 letter was a tender of $200.00 for Dr. Alloush's membership units, as provided for in Section 6.5 of the Operating Agreement.

{¶50} The January 2009 letter is correct that, by tendering his resignation from St. Elizabeth, Dr. Alloush no longer satisfied the membership criteria set forth in Section 6.2 of the Operating Agreement. However, there is absolutely no evidence, nor has the argument ever been raised, that Dr. Alloush violated the restrictive covenants of Section 6.3. Accordingly, Dr. Alloush could not have been expelled from the company for violating Section 6.3.

{¶51} Section 6.5 of the Operating Agreement states that "a Member may not be expelled based solely on the Member's failure to continue satisfying the membership criteria as a result of a Triggering Event * * * unless such failure involves the Member's violation of §6.3." A Triggering Event includes "retirement," defined as when "the Member has completely discontinued his or her practice of medicine." Section 1.9(ff) of the Operating Agreement.

**{¶52}** As Dr. Alloush had discontinued his practice of medicine in December 2008, reasonable minds can only conclude that PCV breached the Operating Agreement by expelling him without justification in January 2009.

**{¶53}** The majority contends that there is "ample evidence" that Dr. Alloush did not retire from the practice of medicine in December 2008, despite the fact that, as of that date, he had no office, no equipment, no patients, no insurance, no privileges, had left the county, and has since derived "zero income from being a doctor with an active license in Ohio." *See* R.C. 4731.34(A)(3)(a) and (b) ("[a] person shall be regarded as practicing medicine * * * who * * * [e]xamines or diagnoses for compensation of any kind" and/or "[p]rescribes * * * for compensation of any kind, direct or indirect, a drug or medicine").

**{¶54}** The "ample evidence" the majority refers to is the fact that Dr. Alloush maintains his medical license and writes an occasional prescription for friends and/or family. Neither activity, however, is inconsistent with retirement from the practice of medicine. More significantly, neither activity constitutes the practice of cardiac medicine, which is the sole focus of PCV's raison d'être. There is simply no genuine issue of material fact to resolve as to whether Dr. Alloush was retired from the practice of medicine when PCV expelled him in January 2009.

**{¶55}** Finally, the "ample evidence" the majority refers to is ultimately irrelevant to the issues of this case. The majority concedes that PCV breached the Operating Agreement by expelling Dr. Alloush in January 2009. Everything that occurred subsequent to January 2009, the time of PCV's material breach, must be ignored for the purpose of evaluating Dr. Alloush's claims. Stated otherwise, if Dr. Alloush was retired

in January 2009, nothing that occurred afterwards alters that fact. Such evidence would not even be admissible at trial. It is not reasonable to imagine that any jury would conclude Dr. Alloush was practicing medicine in January 2009, when he had no employment, no patients, no income, no office, no equipment, no insurance, and was not in the country.

{¶56} The majority also contends that there is a genuine issue of material fact as to whether Dr. Alloush breached his "clear duties to notify PCV if [he] intended to retire." *Supra* at ¶ 35. The Operating Agreement provides that a member shall give PCV "prompt written notice of any Triggering Event," and "shall have the right to voluntarily withdraw from the Company, with thirty (30) days prior written notice." In the present case, PCV had impermissibly expelled Dr. Alloush less than thirty days after the formal closing of his office. Moreover, the January 2009 letter acknowledged that PCV learned that Dr. Alloush resigned his privileges at St. Elizabeth on January 9, 2009, just thirty days after he tendered his resignation. The majority provides no reason why this should constitute a material breach. Speculation about Dr. Alloush's motivation for not providing written notice is irrelevant.

{¶57} "A 'material breach of contract' is a failure to do something that is so fundamental to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform." *Marion Family YMCA v. Hensel*, 178 Ohio App.3d 140, 2008-Ohio-4413, 897 N.E.2d 184, ¶ 7 (3rd Dist.). Conversely, "[m]erely nominal, trifling, or technical departures are not sufficient to breach the contract." (Citation omitted.) *Warren Concrete & Supply, Inc. v. Strohmeyer Contracting, Inc.*, 11th Dist. No. 2010-T-0004, 2010-Ohio-5395, ¶ 18.

16

**{¶58}** In the present case, Dr. Alloush's obligation to provide prompt notice of his retirement bore no relationship to the essential purpose of the Operating Agreement. Assuming, arguendo, that prompt notice was essential, the breach of this provision was rendered immaterial by the facts that PCV received actual notice of his retirement and that PCV has demonstrated no prejudice as a result of Dr. Alloush's inaction. It is well-established in Ohio law that, "where there is evidence of actual notice, a technical deviation from a contractual notice requirement will not bar the action for breach of contract brought against a party that had actual notice." *Stonehenge Land Co. v. Beazer Homes Investments, LLC*, 177 Ohio App.3d 7, 2008-Ohio-148, 893 N.E.2d 855, ¶ 24 (10th Dist.) (cases cited).

**{¶59}** Finally, PCV argued that the trial court erred in its determination of the value of Dr. Alloush's Membership Units by considering fiscal years 2007 and 2008. According to PCV, since Dr. Alloush suspended his medical practice in December 2008, the "previous two (2) fiscal years," for the purposes of determining the Formula Amount, were 2006 and 2007.

**{¶60}** Section 7.5(a) of the Operating Agreement provides that, "[u]pon withdrawal of a Member," the value of the membership units shall be calculated based on the member's income "for the previous two (2) fiscal years of the Company." The terms of the Operating Agreement plainly state that a member may not withdraw from the company without giving written notice, and that a member may remain in good standing with the company, even after retirement. In the present case, Dr. Alloush neither withdrew nor was expelled from PCV in 2008. Although he had retired, that event did not automatically terminate his membership in the company. Dr. Alloush's

17

membership terminated with his expulsion in January 2009. Accordingly, fiscal years 2007 and 2008 are the proper basis for calculating the value of his membership units.

{¶61} In sum, Dr. Alloush had, in the words of the Operating Agreement, "discontinued his * * * practice of medicine" in December 2008, and PCV's expulsion of Dr. Alloush was a breach of the Agreement. Dr. Alloush is entitled to judgment as a matter of law. I respectfully dissent.