[Cite as *Charlie's CDJR, L.L.C. v. Charlie's Toledo, Inc.*, 2026-Ohio-18.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Charlie's CDJR, LLC., et al.

Appellees

v.

Charlie's Toledo, Inc., et al.

Appellants

Court of Appeals No.  {48}L-24-1120

Trial Court No.  CI0202102001

**<u>DECISION AND JUDGMENT</u>**

Decided: January 6, 2026

* * * * *

Michael D. Stultz and Rex H. Elliott, for appellees.

Gregory H. Wagoner and Alia A. Kadri, for appellants.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from the judgments of the Lucas County Court of Common Pleas which granted two motions for summary judgment by Charlie's CDJR, LLC and by Charlie's Real Estate, LLC, each Ohio limited liability companies and the plaintiffs/counterclaim defendants/buyers-appellees, and denied the cross-motion for partial summary judgment and the motion for reconsideration by Charlie's Toledo Inc., an Ohio corporation, and by Marc A. Guenther, collectively the defendants/counterclaim

plaintiffs/third-party plaintiffs/sellers-appellants.[1] For the reasons set forth below, this

court affirms the trial court's judgments.

{¶ 2} Appellants set forth three assignments of error:

> 1. The Trial Court Committed Reversible Error When It Granted Summary Judgment in Favor of Charlie's CDJR, LLC, Charlie's Real Estate, LLC, and Reineke Family Dealerships, Inc.[2] ("Reineke") on Charlie's Toledo, Inc. and Marc A. Guenther's (collectively, "Charlie's Toledo") Breach of Contract Claims.
> 2. The Trial Court Committed Reversible Error When It Failed to Conduct an In-Camera Review of Communications Withheld by Reineke on the Ground of Privilege that was Necessitated Due to Reineke's Alteration of Documents and Failure to Produce Documents in the Discovery Process.
> 3. Pursuant to §1.1 of the REPA, the Trial Court Erred in Failing to Award Charlie's Toledo $100,000 Due to Reineke's Failure to Pay the Purchase Price.

## I. Background

{¶ 3} The following facts are relevant to the issues raised on appeal.

{¶ 4} This matter is about the failed multimillion-dollar transaction for the sale by

appellants, and the purchase by appellees, of the "FCA US LLC authorized and licensed

new motor-vehicle dealership" called Charlie's Chrysler Dodge Jeep Ram in Maumee,

---

[1] On December 20, 2022, appellants filed a "Notice of Suggestion of Death" for the remaining defendant/counterclaim plaintiff/third-party plaintiff/seller, Dennis P. Amrhein.

[2] Reineke Family Dealerships, Inc., an Ohio corporation, is the third-party defendant to appellants' third-party complaint filed on July 12, 2021, and is not a party in this appeal.

2.

Lucas County, Ohio and involved two codependent contracts: the contract for the dealership assets[3] and the contract for the real estate on which the dealership operated.[4]

{¶ 5} Notably, Charlie's Toledo Inc., as the seller under the real estate contract represented it owns, or will own, in fee simple, the six parcels of commercial real estate on which the dealership operated, called the "Property" in that contract, and had the authority to sell, convey, and transfer clear title to the Property to appellees. Further, Charlie's Toledo, Inc. expressly represented and warranted to appellees that, "Other than Charlie's Toledo, Inc. no one, other than Charlie's Toledo, Inc., has any right or option to lease, use, or occupy all or any part of the Property. No one has any right or option to purchase all or any part of the Property." The parties also agreed to an integration clause in the real estate purchase contract: "This Contract contains the entire agreement of the

---

[3] The "Asset Purchase Agreement," effective on October 20, 2020, is between Charlie's Toledo Inc. by Dennis Amrhein, President, and its shareholders, Dennis Amrhein and Marc Guenther, collectively the "Seller," and Reineke Family Dealerships, Inc. or its designee, by Thomas A. Reineke, President, the "Buyer." Then Reineke Family Dealerships, Inc. by Thomas A. Reineke, President, as "Buyer" entered into an "Assignment Agreement," effective on November 12, 2020, with Charlie's CDJR, LLC by Thomas A. Reineke, President, the "Assignee" and with Charlie's Toledo Inc., by Marc Guenther, Authorized Agent, the "Seller."

[4] The "Commercial Real Estate Purchase Contract," effective on October 20, 2020, is between Charlie's Toledo Inc., by Dennis Amrhein, President, the "Seller," and Thomas A. Reineke, "a representative of an Ohio entity to be designated by him," the "Buyer." Then Thomas A. Reineke, individually, as "Buyer" entered into an "Assignment Agreement," effective on November 12, 2020, with Charlie's Real Estate, LLC by Thomas A. Reineke, President, the "Assignee" and with Charlie's Toledo Inc., by Marc Guenther, Authorized Agent, the "Seller." Then Charlie's Real Estate, LLC, by Daniel E. Reineke, Authorized Representative, the "Purchaser," entered into the "First Amendment to the Commercial Real Estate Purchase Agreement," effective on January 18, 2021, with Charlie's Toledo Inc, by Marc Guenther, Authorized Agent, the "Seller."

3.

parties with respect to the subject matter of this Agreement, and no representations, inducements, promises, or agreements, oral or otherwise, not expressly set forth herein, will be of any force or effect."

{¶ 6} Similar clauses appear in the asset purchase contract. Representations and warranties by Charlie's Toledo Inc., as the seller, include:

> To induce the Buyer to enter into this Agreement, the Seller covenants, warrants, and represents to the Buyer that each of the following representations and warranties are materially true as of the date of this Agreement and will be materially true on and as of the Closing Date: . . . The Seller has full power and authority to enter into this Agreement, to consummate the transactions contemplated hereby, and to perform its obligations hereunder.

The parties also agreed to an integration clause in the asset purchase contract:

> This Agreement, which includes the Exhibits and Schedules referenced in this Agreement, constitutes the entire agreement between the parties pertaining to the subject matter contained in this Agreement. All prior and contemporaneous agreements, representations, and understandings of the parties, oral or written, are superseded by and merged in this Agreement.

{¶ 7} The parties to each contract explicitly conditioned its closing on the simultaneous closing under the other contract.

{¶ 8} In the course of proceeding to a closing, appellees learned that the owner of the Property, Floyd Investments LLC, was obligated until June 25, 2039 to Chrysler Group Realty Company, LLC, who held the exclusive, irrevocable option to lease, with the right of first refusal to purchase, the Property under certain conditions. The 30-year option is recorded in the public records of the Lucas County Recorder. Appellees received the title report on February 18, 2021, and it is undisputed that on February 24,

4.

2021, appellees formally objected to appellants under the real estate contract regarding the condition of the title. Upon confirmation that Chrysler Group Realty Company, LLC would not release its 30-year option on the Property, appellees then sent appellants a letter on March 15. In that letter appellees suggested a path to close the transaction: a ten-percent price reduction due to the undisclosed 30-year option restricting the free transferability of the Property. Appellants responded on March 25 by terminating the asset purchase and real estate purchase contracts and by claiming the stated damage fees under them.

{¶ 9} On May 12, 2021, as amended on September 8, appellees filed a complaint for breaches of contracts against appellants with claims of anticipatorily repudiating their obligations and of failing to pay the stated damages fees.

{¶ 10} Appellants answered, generally denying the allegations and asserting numerous affirmative defenses. Appellants also counterclaimed against Charlie's CDJR, LLC, as counterclaim defendant, for breach of the asset purchase contract and joined the counterclaim with a third-party complaint against Reineke Family Dealerships, Inc., as third-party defendant. Appellants, as counterclaim plaintiffs and third-party plaintiffs, alleged that Charlie's CDJR, LLC and Reineke Family Dealerships, Inc. breached the confidentiality clause of the asset purchase contract, failed to pay the full purchase price, and refused to pay the stated damage fees under that contract. Appellants also counterclaimed against Charlie's Real Estate, LLC, as counterclaim defendant, for breach

5.

of the real estate purchase contract by disclosing confidential information, refusing to pay the full purchase price, and failing to pay damages.

{¶ 11} Discovery ensued, and the parties eventually filed cross-motions for summary judgment on January 17, 2023, with various exhibits filed under seal.

{¶ 12} Appellees sought summary judgment against appellants on the original complaint and appellants' counterclaims and sought damages under each contract. Appellees argued that appellees materially breached the codependent asset purchase and real estate purchase contracts because it was impossible for Charlie's Toledo, Inc., as the seller, to deliver at closing the promised option-free title to the Property due to the irrevocable 30-year option agreement held by Chrysler Group Realty Company, LLC.

{¶ 13} Appellants sought partial summary judgment against appellees on the claims for refusing to pay the full purchase price and for failing to pay them the stated damages. Appellants argued the option agreement encumbering the Property added value to it and that appellees had no valid basis to seek a lower purchase price, which then entitled appellants to terminate the contracts and to seek remedies under them.

{¶ 14} The parties opposed the other's motion, and on September 27, 2023, the trial court granted appellees' motion and denied appellants' motion, reserving until ripe at a future date appellants' breach of confidentiality claims because "discovery is not yet complete on that question" or on the amount of damages, which was subject to a pending motion in limine. In its decision the trial court determined that appellants were the first to materially breach the contracts from the moment of signing them because appellants'

6.

express representations to appellees were false when made and they undisputedly failed to disclose the Property owner's 30-year option with Chrysler Group Realty Company, LLC. The trial court found that due to the false representations, it "was in fact impossible for the Sellers to perform in accordance with their obligations."

{¶ 15} The litigation continued, and appellees filed a second motion for summary judgment on December 4, 2023, with various exhibits filed under seal. Appellees argued that because the trial court determined appellants were the first to breach the contracts in its September 27 decision, then, as a matter of law, appellees had no further obligations under the contracts, including the counterclaimed breach of the confidentiality clauses in each contract. In addition to opposing the second motion, on March 6, 2024, appellants filed a motion for reconsideration of the trial court's September 27 decision, also with various exhibits filed under seal. Appellants argued that the discovery showed appellees were "the first party to materially breach the contracts as early as November 2020, prior to any actionable or material breach by" appellants.

{¶ 16} The trial court disagreed with appellants, and on April 29, 2024, granted appellees' second motion for summary judgment and denied appellants' motion for reconsideration. The trial court determined that due to appellants' material breach of the contracts at the time of signing them, appellees had no further obligations under the contracts, including to close the deal or to pay appellants any damages. Consequently, "Buyers' March 25, 2021 letter requesting a reduction in price as a condition to closing

7.

was essentially a notice, in writing, that the deal was terminated if Sellers did not accept the price reduction."

{¶ 17} Appellants timely appealed.

## II. Standards of Review

### A. Summary Judgment

{¶ 18} Summary judgment isolates and disposes of factually unsupported claims or defenses. *Dresher v. Burt*, 75 Ohio St.3d 280, 288 (1996). "The main purpose of the summary judgment statute is to enable a party to go behind allegations in the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Cunningham v. J. A. Myers Co.*, 176 Ohio St. 410, 413 (1964) (evaluating former R.C. 2311.041(D), now Civ.R. 56).

{¶ 19} We review de novo the trial court's decision on summary judgment. *Smathers v. Glass*, 2022-Ohio-4595, ¶ 30. In employing the same Civ.R. 56 standard as trial courts, we will uphold summary judgment when there is no genuine issue of material fact; the moving party is entitled to judgment as a matter of law; and when viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only come to one conclusion, and that is adverse to the nonmoving party. *Id.* at ¶ 31.

{¶ 20} The moving party "bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher* at 293.

8.

{¶ 21} "[I]f the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.* "The party opposing the motion must show that any issue of material fact is genuine and not based merely on unsupported allegations or the pleadings." *Smathers* at ¶ 31. Thus, we may make reasonable inferences from supported facts, but we may not make inferences solely from another inference, leading to speculation and too much uncertainty as to what the facts are. *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 332-33 (1955). Under Civ.R. 56(C), "any inferences regarding the evidence, including the resolution of ambiguities or inconsistencies, must be made in a manner that favors the nonmoving party." *Smathers* at ¶ 32.

{¶ 22} For summary judgment purposes we do not weigh the evidence because "determining whether issues of disputed fact exist is different from making findings of facts." *Id.* at ¶ 32. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Beckloff v. Amcor Rigid Plastics USA, LLC*, 2017-Ohio-4467, ¶ 14 (6th Dist.).

### B. Breach of Contract

{¶ 23} "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform

when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 41.

> The rules of contract formation in Ohio dictate that courts look to the plain language of the contract language the parties chose to use to determine contractual intent and to not disturb what is clear and unambiguous. "Where the terms are clear and unambiguous, a court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties." (Citations omitted.)

*Telxon Corp. v. Smart Media of Delaware, Inc.*, 2005-Ohio-4931, ¶ 40 (9th Dist.).

{¶ 24} The parties do not dispute the first element of the breach of contracts action: they formed two enforceable, codependent contracts between them, one for the purchase of the Chrysler dealership's assets and one for the real estate on which the dealership operated. Rather, this appeal is about the second and third elements of the breach of contracts action: the failure without legal excuse of the other party to perform when performance is due and damage or loss resulting from the breach, respectively.

### III. Analysis

{¶ 25} We will discuss appellants' assignments of error together as they collectively oppose appellees' motion for summary judgment. Appellants' first assignment of error challenges appellees' initial evidentiary burden under Civ.R. 56(C) in their first and second summary judgment motions. Appellants' second and third assignments of error support their reciprocal burden under Civ.R. 56(E) to oppose appellees' motions and to support their initial evidentiary burden for their own motion for partial summary judgment.

10.

## A. Appellees' First Motion for Summary Judgment

### 1. Appellees' Burden as Movants

{¶ 26} In the first motion for summary judgment, to show that there was no genuine issue as to any material fact that appellants first breached the contracts, appellees pointed to the following sequence of events. First, to the undisputed existence of the asset purchase and real estate purchase contracts, entered in 2020. Then to the undisputed representations and warranties by appellants in the real estate purchase contract that no one, other than Charlie's Toledo, Inc., has any right or option to purchase all or any part of the Property. Then to the undisputed fact that at the time appellants made those representations and warranties, Chrysler Realty Group, LLC held an irrevocable 30-year option, since 2009, to lease or purchase the Property on which the dealership operated. Then to the undisputed fact of Chrysler Realty Group, LLC's refusal to release its 30-year option to the Property. Then to the undisputed fact of appellees' offer to salvage the deal by negotiating a price reduction. Then to the undisputed fact that appellants terminated the contracts rather than negotiate a resolution. Finally, to their entitlement to the stated damages for appellants' termination of the contracts.

{¶ 27} We find appellees met their initial burden as the movant for summary judgment. Where the material facts are undisputed, the only question to be resolved is whether a breach of contract occurred, which is a question of law for the court to decide. *LublinSussman Group LLP v. Lee*, 2018-Ohio-666, ¶ 17 (6th Dist.). Where a contract is clear and unambiguous, our interpretation of it is a matter of law which we review de

11.

novo. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995).

{¶ 28} This court has repeatedly held that, a "material breach is a breach essential to the purpose of the contract." *Kanu v. George Dev., Inc.*, 2002-Ohio-6356, ¶ 17 (6th Dist.); *Bumbera v. Hollensen*, 2000 WL 281738, *2 (6th Dist. Mar. 17, 2000). In other words, we must determine whether the breach substantially defeated, or was critical to, the parties' agreement as opposed to a slight, casual, trivial or technical breach. *Ohio Comp. Services Co. v. Smith*, 1991 WL 77494, *3 (6th Dist. May 10, 1991). Other appellate courts agree. *U.S. Bank Natl. Assn. v. Clarke*, 2024-Ohio-278, ¶ 33 (2d Dist.), citing *Ohio Comp. Services* at *2-3; *Marion Family YMCA v. Hensel*, 2008-Ohio-4413, ¶ 7 (3d Dist.). ("A 'material breach of contract' is a failure to do something that is so fundamental to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform"); *O'Brien v. Ohio State Univ.*, 2007-Ohio-4833, ¶ 56 (10th Dist.), quoting 23 Williston on Contracts, § 63:3 ("At common law, a 'material breach' of contract is a party's failure to perform an element of the contract that is 'so fundamental to the contract' that the single failure to perform 'defeats the essential purpose of the contract or makes it impossible for the other party to perform.'").

{¶ 29} This court has also applied the following five significant circumstances under the Restatement of Contracts to better understand whether a failure to render or to offer performance under a contract is a material breach:

12.

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Ohio Comp. Services* at *3*, quoting Restatement of the Law 2d, Contracts, Performance and Nonperformance, 237, § 241 (1981)*; Russell v. Ohio Outdoor Advertising Corp.*, 122 Ohio App.3d 154, 157-58 (6th Dist. 1997). We recognize that following those five significant circumstances is a subjective inquiry. *Mid Am. Construction, LLC v. Univ. of Akron*, 2019-Ohio-3863, ¶ 56 (10th Dist.); *O'Brien* at ¶ 11 (10th Dist.).

{¶ 30} Here, we find no ambiguity that the essential purpose of the real estate purchase contract is a fee-simple transaction: "Seller [Charlie's Toledo Inc.] owns, or will own, in fee simple, six parcels of commercial real property located at 725 Illinois Avenue in Lucas County, Ohio, 43537 (collectively, the 'Property'). . . . Purchaser [Charlie's Real Estate, LLC] is willing to purchase and Seller is willing to sell the Property on the terms and conditions set forth below."

{¶ 31} Nor do we find ambiguity in the representations and warranties clauses in each contract by appellant Charlie's Toledo Inc. that no one had any right or option to purchase all or any part of the Property and that it had full authority and power to consummate the transactions and perform its obligations. The parties to the contracts

13.

clearly set forth the warranties and representations to be memorialized in writing and omitted any warranties or representations that were not intended to be included. *Stout v. N. Am. Group*, 2007-Ohio-4971, ¶ 14 (12th Dist.). Appellants do not dispute that they made those untrue warranties to appellees; rather, they dispute their importance or materiality.

{¶ 32} Nor do we find any ambiguity in the language in both contracts that the closing under one contract unequivocally required the simultaneous closing under the other contract, and vice versa. Neither party disputes the foregoing. Consequently, by finding that appellants materially breached the real estate purchase contract, that breach caused a simultaneous material breach of the asset purchase contract. Appellants must be held to the unambiguous promises they made in those contracts. *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 17.

{¶ 33} Thus, we are left to interpret the contracts as a matter of law. We find that appellants' untrue warranties in the real estate purchase contract materially breached it at inception because the warranties were essential to the fundamental purpose of the contract and were not slight, casual, trivial or technical. At its inception, or from the moment appellants signed the real estate purchase contract, it was impossible for appellants to deliver to appellees before the year 2039, free of any option of a third party to lease the Property. Appellants' material breach of the real estate purchase contract caused the simultaneous breach of the codependent asset purchase contract.

14.

**{¶ 34}** We further find that the untrue warranties were material breaches that satisfy the five significant circumstances under the Restatement of Contracts. Appellees were completely deprived of the benefit of receiving the Property free from all options. Appellees could not be adequately compensated for the deprivation of that benefit where appellants refused to renegotiate appellees' suggested ten-percent purchase price reduction: appellants admit that while arguing appellees "could have been adequately compensated for the Option with a reduction in the sale price," appellants refused to do so in favor of terminating the deal. Appellants will not suffer forfeiture, or the denial of compensation, because their untrue warranties made it impossible for them to perform and defeated an essential purpose of the contract. There was no likelihood -- in fact impossible for the next 19 years -- that appellants could deliver the Property option-free to appellees at closing, even after taking account of all the circumstances including any reasonable assurances for an opportunity to cure. Finally, the extent to which the behavior of appellants to terminate the contract and demand damages rather than renegotiate the purchase price with appellees does not comport with standards of good faith and fair dealing.

**{¶ 35}** Consequently, as a matter of law, following appellants' material breach, appellees had no obligations to perform under either contract.

### 2. Appellants' Burden as Nonmovants

**{¶ 36}** The burden then shifted to appellants under Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue of material fact for trial. For the

15.

following reasons we find that appellants failed to meet their reciprocal burden as the nonmovants for summary judgment.

{¶ 37} Appellants argue they did not misrepresent their title to the Property because appellees knew that Chrysler Group Realty Company, LLC "required site control in order for Reineke to obtain the dealership." However, their argument fails because we find no ambiguity in the integration clauses of each contract. Any evidence appellants could seek to bring forth under Civ. R. 56(c) to oppose appellees' summary judgment as to understandings outside of the contracts would not be admissible by the expressly written integration clauses of those contracts. *Williams v. Spitzer Autoworld Canton, L.L.C.*, 2009-Ohio-3554, ¶ 14 (as a rule of substantive law, where the parties to a written contract assented to the complete and accurate integration of that contract, evidence of prior understandings and negotiations are inadmissible under the parol evidence rule to contradict the written contract); *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27-30 (2000) (the parol evidence rule is a matter of substantive law and excludes extrinsic evidence to contradict an integrated written agreement intended to be the complete agreement).

{¶ 38} Alternatively, appellants argue, "Assuming, *arguendo*, that Charlie's representation regarding the Option was a breach 'the moment' the REPA was signed, it was not a _material_ breach excusing Reineke's performance." (Emphasis in original.) This court finds appellants' argument does not overrule the Civ.R. 56 requirements placed on the party opposing summary judgment.

16.

{¶ 39} "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E). Merely labeling its untrue representations and warranties at the time of signing the contracts as "not material" does not satisfy appellants' Civ.R. 56(E) burden. As we previously found, appellants' untrue representations and warranties at the inception of the real estate contract were unquestionably material to that contract because it defeated the essential purpose of the contract and made it impossible for appellants to close either contract.

{¶ 40} Appellants oppose summary judgment by arguing appellees first breached the contracts in four ways: by "flagrantly violating the confidentiality provisions"; by failing "to follow specific procedures before a party could recover for breach of contract" requiring a notice-and-cure period; by attempting to renegotiate the fixed purchase price; and by failing to proceed to closing within 14 days – with no exceptions -- of FCA US, LLC's conditional approval of appellees as an authorized Chrysler dealer. We disagree. Appellants' arguments lack merit where we found appellants breached the contracts ab initio, and appellees had no further obligations to perform under the contracts. Given the foregoing, appellants had no enforceable rights under both contracts. Therefore, appellees could not breach the contracts, and appellants do not satisfy their reciprocal burden in

17.

opposing summary judgment. Citing *Younglove Const., LLC v. PSD Dev., LLC*, 2010 WL 4570194, *6 (N.D.Ohio Nov. 3, 2010), appellants argued that where the express terms of the contracts required a notice-and-cure period, appellees were not entitled to stop performance "regardless of the materiality of appellants' breach. However, even the *Younglove* court agrees with our basic understanding of material contract breach: it is so fundamental to the contract that it defeats the essential purpose of the contract or makes it impossible for the other party to perform. *Id.* at *6, citing *Marion Family YMCA*, 2008-Ohio-4413, at ¶ 7 (3rd Dist.).

{¶ 41} Finally, appellants argue appellees did not suffer damage because there is "no evidence that Charlie's would have suffered forfeiture or failed to operate in good faith." We disagree. As intended by the parties in the real estate purchase contract, the stated damage fee of $100,000 for the failure to close is clear. *Boone Coleman Constr., Inc. v. Piketon*, 2016-Ohio-628, ¶ 12. In fact, appellants sought such damage in their counterclaim and their partial motion for summary judgment, motion for reconsideration, and third assignment of error.

{¶ 42} Upon de novo review, when viewing the evidence most strongly in appellants' favor, reasonable minds can only come to one conclusion, and that is adverse to appellants. We find that there is no genuine issue of material fact that appellants first materially breached the contracts and that appellees are entitled to judgment as a matter of law.

{¶ 43} Appellants' first assignment of error is not well-taken.

18.

**B. Appellees' Second Motion for Summary Judgment/Appellants' Motion for Partial Summary Judgment and Motion for Reconsideration**

{¶ 44} Appellees' second motion for summary judgment argued there was no genuine issue as to any material fact about breaches to the confidentiality provisions of the contracts. In support, appellees pointed to the trial court's decision for the first motion for summary judgment that appellants' material breach excused appellees' performance. They argued, "Buyers can't breach a contract that they had no obligation to perform." We agree. We previously found that as a matter of law, appellants' material breach at the inception of the codependent contracts excused appellees' performances under them, including being subject to the confidentiality clauses. We found no evidence in the record to rebut appellees' breach of contracts claims that appellants' untrue representations and warranties about options on the Property -- expressly entered into at the inception of the codependent and integrated contracts -- was due to legal excuse.

{¶ 45} Appellants' second assignment of error fails to satisfy their reciprocal burden to oppose appellees' second motion for summary judgment. Their second assignment of error is derived from their counterclaims alleging appellees' breach of the confidentiality clauses that are the subject of their motions for partial summary judgment and reconsideration, all of which fail as a matter of law. We do not find appellants met either their reciprocal burden under Civ.R. 56(E), or their initial burden under Civ.R. 56(C) for their own motions, by chastising the trial court for failing to conduct an in-

camera review[5] of evidence, which they admit is extrinsic to the contracts, for their futile claims. Appellants' motion for partial summary judgment and subsequent motion for reconsideration were properly denied by the trial court.

{¶ 46} Nor does appellants' third assignment of error satisfy their burden to oppose appellees' second motion for summary judgment. Because appellants materially breached the contracts at their inception, they are not entitled to claim damages under those contracts.

{¶ 47} Upon de novo review, when viewing the evidence most strongly in appellants' favor, reasonable minds can only come to one conclusion, and that is adverse to appellants. We find that there is no genuine issue of material fact that where appellants materially breached the codependent contracts, appellees had no further obligations under the clauses for confidential information and damages, and that appellees are entitled to judgment as a matter of law.

{¶ 48} Appellants' second and third assignments of error are not well-taken.

## IV. Conclusion

{¶ 49} On consideration whereof, this court finds that there remain no genuine issues of material fact and, after construing all the evidence most strongly in favor of appellants, appellees are entitled to summary judgment as a matter of law. The judgments

---

[5] Appellants argue the trial court denied their December 26, 2023 motion to strike or in the alternative motion for additional time to respond. Appellants sought an order either striking appellees' December 4 notice of compliance with the trial court's November 14 order to submit evidence for its in-camera review or staying the response period until after they conclude discovery on the breach of confidentiality claim. However, on January 8, 2024, the trial court granted appellants' request for additional time to respond.

20.

of the Lucas County Court of Common Pleas are affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, P.J.

_____
JUDGE

Myron C. Duhart, J.

Charles E. Sulek, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.